GEORGE SCHWARTZ      :      No. 7574,

     versus      :

W. S. M c C R A W .      :      COURT OF APPEAL.

**Max Dinkelspiel, Judge.**

---------------------------------------------------

This is an eviction suit.  McCraw, the defendant, occupied
the premises 1922 Peniston Street, under a lease from the Lib-
erty Homestead, an agent for an unknown principal, dated Sep-
tember 6, 1918, for one year from October 1st., at a monthly
rental of $40.00, payable on the 1st.of each month.  The lease
contains, amongst other provisions, the following:

> "Should lessee become owner of this property,
> this lease to be null and void."

The property in question was put up for sale at auction
in the latter part of September or early part of October.  McCraw,
the defendant, and Schwartz, the plaintiff, were competitive bid-
ders at the sale.  One Morris B. Redmann became the adjudicatee.
The deed to him was made on October 19, 1918, and he in turn
transferred the property to Schwartz, the plaintiff, two days
thereafter, or October 21, 1918.

On the 11th of October, 1918, which was even before the date
of the deed to Redmann, the attorneys for Schwartz, acting under
instructions from him, notified McCraw to vacate the premises
by the 1st of November.  The rent for November and December was
paid by defendant to the Liberty Homestead.  Under date of Dec-
ember 14,1918, the attorneys for Schwartz wrote McCraw that
Schwartz had authorized them to collect the rents on the property,
that the lease which was made with the Liberty Homestead had been
transferred to Schwartz, and that payments should be made to the
attorneys at their office promptly at the conclusion of each
month.  McCraw, after consulting with his attorney, who was
Mr. J. Zach Spearing, advised the attorneys of Mr. Schwartz

that certain injuries to the roof and the water-pipes were causing considerable damage, and ended the letter by stating that he would be glad to take the matter up with a view of amicably and satisfactorily adjusting the question, and expressing the hope that he and the attorneys for plaintiff would succeed in doing so.

No reply was received to that letter. It was during the Christmas week and also the second visitation of the "flu", which was at its height then, therefore conditions generally were very much confused and unsettled. The rents prior, for October and November, had been paid, as stated, to the Liberty Homestead Association, and under the advice of Mr. Spearing Mr. McCraw, the defendant, did not pay the rent due, because he was advised that Schwartz had not yet become the owner of the property and there might be some trouble.

The rent due January 1st, 1919, not having been paid January 7, 1919, and there being no agreement, no acquiescence in delay, no waiver, no admission, and no equitable estoppel on the part of plaintiff, the lessor, through his attorneys, insisted that payment should be made promptly at maturity and that all terms of the lease should be strictly complied with, and on the 24th of January, 1919, the present suit was instituted, alleging, amongst other things, that in violation of said lease the said W. S. McCraw failed to pay the rent to petitioner due January the 1st, 1919; that owing to said failure on the part of said McCraw to pay said rent petitioner had notified him on January the 7th, 1919, to vacate the premises in question, and attached to the petition a copy of the notification, dated January the 7th, 1919, which notification was received by said McCraw ten days previous to the institution of this suit; and the prayer was that defendant, McCraw, be cited summarily by rule to show cause on a day and hour to be fixed by the court why judgment should not be rendered herein in favor of petitioner,

and against McCraw, condeming him to vacate said premises No. 1922 on Peniston Street, between Dryades and Rampart Streets, in this city, and to deliver possession of the same to petitioner, and decreeing that upon his failure to comply with said judgment within twenty-four hours after its rendition a writ of possession issue herein, commanding the Civil Sheriff of the Parish of Orleans to eject him from said premises and put petitioner in full possession thereof.

On the 7th of February, 1919, exceptions to the petition and rule were filed, setting up: (1) That the same discloses no cause of action; (2) that plaintiff is not a proper party and has no standing in this suit; (3) that the same is too vague, general and indefinite to permit excepter to properly answer thereto; (4) the prematurity of the suit. And in accordance with the order of court the defendant, through his counsel, on the same day answered, reserving the benefit of exceptions, setting up:

1st: Admitting that by an agreement in writing the Liberty Homestead leased to respondent the premises 1922 Peniston Street for a term of twelve months from the 1st of October, 1918, to September the 30th, 1919, at a monthly rental of $40.00, payable on the 1st day of each month, and respondent alleges that said contract of lease is the best evidence of its contents; further alleging that, though it is stated in the lease that the Liberty Homestead leased the property to respondent, there is nothing to indicate the person for whom the homestead pretended to act as agent, and therefore the lease was entirely and solely with the Liberty Homestead.

2nd: Denying that the homestead had transferred or assigned the lease to the plaintiff, and if this was done it was done without the knowledge of the defendant.

3rd: That the allegations in the petition being vague, general and indefinite, and not specifying whether the notice therein required was given verbally or in writing, or when given, denies that fact, but admits that he received from the attorneys of the plaintiff a letter dated the 14th of December, 1918, informing him that the plaintiff was then the owner of the property and requesting that payments should be made at the office of the attorneys for the plaintiff, which letter was annexed to and made part of the answer; that when this occurred there was no rent due, and defendant did not consent nor acquiesce in the transfer of the lease from the Liberty Homestead to plaintiff, or any other person; that there were defects in said building which should be repaired, and which respondent, as he was advised and believed, was not liable for, it being necessary to repair the roof to one part of the building and to repair a leak in one of the pipes over the pantry, which was causing considerable damage, not only to defendant's own effects, but to the building itself; that under the advice of counsel there was written, on December 18, 1918, a letter to the attorneys of plaintiff, calling their attention to the necessity of making the repairs, and avoiding any discussion of the effect of the transfer of the lease, but not acquiescing therein, suggesting the desire to take the matter up so that it could be amicably and satisfactorily adjusted, and a copy of the letter in question is annexed and made part of the answer; that no reply was received to said letter, but that defendant was ready, willing, able and prepared to pay the rent when due, but that no demand was made upon him either directly or indirectly for same.

■

And further answering, respondent says he did not pay the rent to the plaintiff on January the 1st, 1919, but denies that his failure to do so was, under the facts and circumstances of this case, a violation of the lease, but on the contrary, claims and alleges that he was well within his rights and was justified in acting as he did. He alleges further and denies that either the plaintiff or the Liberty Homestead made any demand upon him for the payment of the rent due on January 1, 1919, either at that time or any other time, and therefore, that he was in any manner in deafult. He denies, further, that he ever reecived from plaintiff any notice to vacate the premises, as required, in the manner provided by law. Ho alleges that on or about January 9, 1919, he paid the rent for the month of December to the Liberty Homestead, from whom he had rented said premises, and the homestead accepted said rent, therefore he was absolved from any fault or default or penalty from any delay which might have existed in the payment of said rent, the manner of the payment of said rent being the same which had been followed by him during his occupancy of the premises. Further, respondent denies that the letter dated January the 7th, 1919, - a copy of which is also annexed to the petition, - is a notification to vacate the premises as required and provided by law, and denies that the said letter was served in the manner required by law, or that the said letter in any manner complies with the law or is sufficient to base this suit upon. He admits that he is still in possession of the premises, and denies that plaintiff is entitled to the summary process of the court or to any process whatever. He denies that he has in any manner violated the law or infringed the rights, if any, of the plaintiff. He does not admit

■

493

that plaintiff has any of the rights asserted by him in his petition and attempted to be enforced in this suit. Wherefore he prays the suit be dismissed, for costs and general relief.

The only testimony in this record are the letters alluded to and the testimony of Willim J. Guste, one of the attorneys of plaintiff, of J. Zach Spearing, the attorney for the defendant, and of Hyman Mitheff, who was in the employ of the Liberty Homestead Association; and from it all, together with the lease, we gather the facts to be as stated in the answer of the defendant in this cause. It is apparent, from an inspection of the lease, from the letters of plaintiff's attorneys and from the acts of plaintiff, that there was an attempt, from the beginning, to dispossess the defendant, and the very first opportunity that seemed to be available plaintiff endeavored to take advantage of. The defendant was ever ready and willing, and had always paid his rent promptly to the Liberty Homestead. He was a bidder at the sale of this property, but unsuccessfully so, and even prior to the title being made to plaintiff, or to his agent Redmann, there was an attempt made to obtain possession by giving notice to the defendant to vacate, which was recalled.

It is evident, from the record in this case, that the defendant was not served with notice to vacate in the proper way under the law. A copy of this notice is in the record, showing that it was sent to defendant through registered mail, and there was nothing to show that he had ever received it. On the trial of the case, when the counsel's attention was called to this fact, he was given until the next day to produce the letter. He failed to do so, but offered the testimony of Mr. Spearing in order to prove service on his client. He utterly failed in this.

The Civil Code, Article 2157, speaking of the Manner in which obligations may be extinguished, under the head "Place of Payment"

provides:

> "The payment must be made in the place specified in the agreement. If the place be not thus specified, the payment, in case of a certain and determinate substance, must be made in the place where was, at the time of the agreement, the thing which is the object of it.
> "These two cases excepted, the payment must be made at the dwelling of the debtor." (Citing authorities).

Article 2712 C. C. provides:

> "Non-Payment of Rent. The lessee may be expelled from the property if he fails to pay the rent when it becomes due."

These articles have been construed by our Supreme Court in the 121 La. Reports, in the case of the Standard Brewing Company v. Anderson, at page 935. At page 941 of the same case, the court goes on to say:

> "The punctuality required of the lessee in the payment of his rent has been designed solely for the protection of the lessor, and cannot be allowed to be converted in his hands into a means of entrapping and oppressing the lessee."

In the case of Bacos v. Mandot, 3 Court of Appeal, 324, this court held:

> "When a lessor, month after month, has, without objection or protest, accepted the rental a few days after the maturity of the notes, he cannot, without previous notice to his tenant, claim the forfeiture of the lease."

The court goes on to say:

> "The punctuality required of the lessee in the payment of his rent has been designed solely for the protection of the lessor, and cannot be allowed to be converted in his hands into a means of entrapping and oppressing the lessee."

This was followed by other decisions, and we quote from Court of Appeal Reports, Vol. 10, 105, Lafayette Realty Company v. Joseph Puglia. The syllabus reads:

> "In the absence of a stipulation in the lease to the contrary, the rent is payable at the dwelling of the lessee."

And in the body of the decision, we find:

> "The plaintiff, as landlord, sues to cancel the lease existing with defendant, on the ground that the latter failed to pay promptly the installment of rent for May when it matured on the last day of that month. For the purpose of showing that defendant was placed

495

in mora, plaintiff relies solely upon proof to the effect that defendant failed to comply with the written notice served upon him demanding that he pay this installment of rent at plaintiff's place of business promptly at maturity. The lessee was within his rights when he ignored this demand, for where, as in this case, there is no specification in the lease as to the place where the rent should be paid, the law prescribed that 'payment must be made at the dwelling of the debtor' (R.C.C. 2157). By formally tendering the rent, after maturity but prior to default and to filing of this action, the defendant effectively stripped the landlord of his right to cancel his lease on the ground alleged."

Act No. 46 of the Legislature of 1918 does not in any manner aid the defendant in this cause. On the contrary, in our opinion, it strenghtens defendant's rights.

We have thoroughly examined the documents, particularly the lease, the notice to vacate, and everything else pertaining to this cause, and we have come to the conclusion that the only finding that is possible in the case, in our opinion, is that the judgment of the court a que, dismissing plaintiff's suit, was absolutely correct; and it is therefore affirmed, with costs in both courts.

*Judgment affirmed.*